25-7254

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID C. THOMPSON,
AKA Val Thompson,
AKA John David Thompson,
AKA James Clyde Thompson
Plaintiff-Appellee,

v.

PERRY RUSSELL and SANDRA WALKER,
Defendants-Appellants,

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA,
D.C. No. 3:23-cv-00341-MMD-CSD

## DEFENDANTS-APPELLANTS' EXCERPTS OF RECORD VOLUME I (ER001-ER028)

Respectfully submitted by:
AARON D. FORD
Attorney General
CHRIS DAVIS (Nevada Bar No. 6616)
Senior Deputy Attorney General
Office of the Attorney General, State of Nevada
1 State of Nevada Way, Suite 100
Las Vegas, Nevada 89119
(702) 486-9252 (phone)
cwdavis@ag.nv.gov
*Attorneys for Defendants-Appellants*
*Perry Russell and Sandra Walker*

**ER001**          **ER001**          **ER001**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DAVID THOMPSON,

Plaintiff,

v.

PERRY RUSSELL, *et al.*,

Defendants.

Case No. 3:23-cv-00341-MMD-CSD

ORDER

**I.      SUMMARY**

*Pro se* Plaintiff David Thompson, formerly incarcerated in the custody of the Nevada Department of Corrections ("NDOC") at Northern Nevada Correctional Center ("NNCC"), brings this civil rights action under 42 U.S.C. § 1983 to redress constitutional and other violations he suffered while housed at NNCC when prison officials detained him in excessive sunlight and heat conditions for over three hours on a single occasion in July 2021. (ECF Nos. 1-1, 6.) Defendants[1] filed a motion for summary judgment (ECF Nos. 52, 54 ("Motion")).[2] Before the Court is United States Magistrate Judge Craig S. Denney's Report and Recommendation (ECF No. 75 ("R&R")), to which Thompson now timely objects (ECF No. 78 ("Objection")), recommending the Court grant Defendants' Motion on their arguments that (1) Thompson failed to exhaust his administrative remedies, and (2) no genuine dispute of material fact exists as to the merits of the Eighth Amendment conditions of confinement claim against Sergeant Walker. (ECF No. 75 at 1, 10.) The

---

[1]Defendant NDOC employees include Sergeant Sandra Walker and former Warden Perry Russell. (ECF No. 52.)

[2]Thompson filed a response (ECF No. 68), and Defendants filed a reply (ECF No. 73). Thompson filed a motion to extend time to file an objection to the R&R (ECF No. 76), which the Court granted (ECF No. 77). Defendants filed a motion to extend time to file an opposition to the Objection (ECF No. 79), which the Court also granted (ECF No. 80).

Court finds that Defendants have not met their burden to demonstrate an absence of genuine disputes of material fact and, for reasons further explained below, the Court rejects the R&R's recommendation to grant summary judgment on Defendants' exhaustion argument. The Court finds genuine disputes of material fact preclude summary judgment on the Eighth Amendment conditions of confinement claim and therefore denies the Motion. The Court similarly denies summary judgment as to the remaining grounds that the R&R did not address.[3]

## II.    RELEVANT BACKGROUND

### A. Thompson's Allegations

The Court previously screened Thompson's First Amended Complaint (ECF No. 6 ("FAC" or "Complaint")) and found that it stated colorable claims under the Eighth Amendment for weather-related, sanitation, and medical conditions and the Fourteenth Amendment Equal Protection Clause, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") for disability discrimination.[4] (ECF No. 7 ("Screening Order").) The following facts are taken from the Court's Screening Order and adapted from the Complaint.[5] (Id. at 3.)

Thompson suffers from multiple serious medical conditions, including Behcet's disease—an auto-immune disorder—vertigo, and hearing impairment, which require him to avoid prolonged exposure to sunlight. (Id.) Thompson, who was housed in the medical unit ("Unit 3") at NNCC and assigned a wheelchair for part-time use, had been enrolled

---

[3]Because the Magistrate Judge recommended granting summary judgment on the exhaustion ground, he did not address Defendants' other arguments—that they are entitled to qualified immunity and that some of the claims fail on the merits.

[4]The Court permitted Thompson to proceed on the Eighth Amendment medical indifference claim against former Warden Perry Russell. (ECF No. 7 at 8-9.) The Court allowed the remaining claims to proceed against NDOC employee Sergeant Sandra Walker, including: (1) an Eighth Amendment conditions of confinement claim for alleged detainment in excessive heat conditions (id. at 7-8); (2) a Fourteenth Amendment Equal Protection Clause claim (id. at 9-10); and (3) disability discrimination claims under the ADA and RA against Walker in her official capacity (id. at 10-12).

[5]The following facts are undisputed unless otherwise noted.

2

in the prison's chronic care clinic for over a decade. (*Id.* at 4.) He asserts that both Warden Russell and Sergeant Walker were aware of his medical conditions and mobility restrictions. (*Id.*)

On July 11, 2021, at 11:15 a.m., Walker ordered Thompson and approximately 100 other elderly and medically vulnerable Unit 3 inmates to be detained for over three hours on the outdoor athletic field without access to water, toilets, shade, or shelter during an extreme heat warning, with temperatures exceeding 100 degrees.[6] (*Id.*)

Thompson alleges that the decision to detain Unit 3 outside on the field was discriminatory. (*Id.*) In particular, Thompson claims Unit 3 inmates were told "they were being detained on the athletic field because Walker didn't want their wheelchairs and walkers on the gym floor,"[7] while able-bodied inmates from the same unit were allowed to return indoors at 12:05 p.m.[8] (*Id.* at 5.)

Thompson claims he suffered extreme sunburn, heat exhaustion, migraines, fever, chills, and incontinence during the detention and continued to suffer ongoing symptoms, thereafter, including worsened migraines, new skin issues, vertigo, and increased reliance on his wheelchair. (*Id.* at 4.) Thompson's continuing requests for medical attention were either ignored or denied. (*Id.* at 5.)

**B. Grievance History and Exhaustion**

Three days after the incident, Thompson filed an informal-level grievance

---

[6]According to Defendants, Unit 3 inmates were moved outside to allow staff to conduct a unit compliance check. (ECF No. 52 at 3-4; ECF No. 52-10 at 3.) In her sworn declaration, Walker states that she instructed the correctional officers conducting the compliance check to offer "gate calls" every 30 minutes, allowing inmates access to water, shade, and restrooms. (ECF No. 52-10 at 3.)

[7]In her sworn declaration, Walker counters that she "never ordered the correctional officers conducting the unit compliance check to prohibit inmates who used wheelchairs or walkers from entering the gym." (ECF No. 52-10 at 3.)

[8]Thompson asserts that inmates from the "SCU" division of Unit 3 were "called back inside." (ECF No. 7 at 5.) In Nevada prisons, the Structured Care Unit ("SCU") houses individuals with mental health needs. https://doc.nv.gov/facilities/nncc_facility/. Thus, the Court infers that Thompson's reference to SCU inmates refers to those without physical disabilities.

ER004                    ER004                    ER004

(Grievance No. 20063124885) on July 14, 2021, referencing conditions of confinement. (ECF No. 52-3 at 4.) He then filed a first-level grievance on August 18, 2021 (*id.* at 13) and a second-level grievance on October 6, 2021 (*id.* at 26). Defendants now move for summary judgment, in part, on the basis that Thompson failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") as to all claims except the Eighth Amendment conditions of confinement claim, which Defendants seek to dismiss based on an absence of genuine dispute of material facts. (ECF No. 52 at 7-9, 13-14.)

## III.    DISCUSSION[9]

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where, as here, a party timely objects to a magistrate judge's R&R, the Court must "make a *de novo* determination of those portions of the R&R to which objection is made." *Id.* The Court's review is thus *de novo* because Thompson filed his Objection (ECF No. 78). The Court first addresses Defendants' administrative exhaustion argument and rejects Judge Denney's recommendation to grant summary judgment. The Court next turns to the merits of Thompson's Eighth Amendment conditions of confinement claim against Walker and finds, on *de novo* review, that, because genuine disputes of material fact exist, the Court will deny summary judgment.

### A. Substantive Exhaustion and Adequacy of Thompson's Grievances

Defendants argue in their Motion that Thompson failed to exhaust his administrative remedies, as required by the PLRA, as to his (1) Eighth Amendment deliberate indifference to serious medical needs claim, (2) Fourteenth Amendment equal protection claim, and (3) disability discrimination claims under the ADA and RA. (ECF No. 52 at 7-9.) In particular, Defendants argue that while Thompson grieved his detention in

---

[9]The Court incorporates by reference Judge Denney's description of the background of the case and recitation of pertinent allegations in the FAC, provided in the R&R. (ECF No. 75 at 1-2.)

**ER005**                    **ER005**                    **ER005**

extreme weather during the compliance check, he did not raise concerns about his medical care or allege age- or disability-based discrimination during the grievance process, and therefore failed to put NDOC on notice of those remaining claims[10]. (*Id.* at 9.) Viewing the record in the light most favorable to Thompson,[11] however, the Court disagrees.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). To exhaust administrative remedies within the NDOC, inmates must follow the procedures set forth in Administrative Regulation ("AR") 740, and they must complete three tiered levels of a grievance: informal, first, and second review. (ECF No. 52-7.)

The PLRA requires *proper* exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) ("proper exhaustion" means "using all steps the agency holds out"); *see also Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (noting that to properly exhaust their administrative remedies under the PLRA, a plaintiff must adhere to "critical procedural rules"). This means that, generally, inmates must adhere to institutional grievance procedures. The Supreme Court has opined on the level of detail necessary in a grievance to put the prison

---

[10]Remaining claims include the (1) Eighth Amendment medical deliberate indifference to serious medical needs claim, (2) Fourteenth Amendment equal protection claim, and (3) ADA and RA discrimination claims.

[11]In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). "If undisputed evidence viewed in the light most favorable to the [nonmoving] prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

5

on notice of a claim and has held: "[t]he level of detail necessary . . . to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock,* 549 U.S. 199, 218-19 (2007) (holding that prisoners could not be required to name all defendants in a grievance where the prison's procedures did not mandate such).

A prison grievance need not contain all the elements or specificity of a future legal claim to satisfy the exhaustion requirement. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("A grievance need not include legal terminology . . . unless . . . in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim."). This is because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* (citing *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004)). Moreover, an inmate's compliance with the PLRA exhaustion requirement as to some, but not all, claims does not warrant dismissal of the entire action. *See Jones*, 549 U.S. at 219-24; *Lira v. Herrera*, 427 F.3d 1164, 1175 (9th Cir. 2005) (rejecting a total exhaustion requirement and holding that where a prisoner's complaint contains both exhausted and unexhausted claims, a district court should dismiss only the unexhausted claims).

The Ninth Circuit applies the *Strong* standard to determine the required level of factual specificity in an inmate's grievance. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002)). Under *Strong*, when a prison's grievance procedures are "silent" or "incomplete" as to factual specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong*, 297 F.3d at 650) (holding that a prisoner's "failure to grieve deliberate indifference does not invalidate his exhaustion attempt" in § 1983 suit alleging cruel and unusual punishment and unsafe living conditions in violation of the Eighth Amendment). Under the Nevada

6

prison grievance system, an inmate may resolve a claim through the NDOC's administrative process when they can "factually demonstrate a loss or harm," which "aris[es] out of . . . issues within the authority and control of the NDOC." (ECF No. 52-7 at 2.)

The grievances filed demonstrate that Thompson put NDOC officials on clear notice of the harsh weather conditions his unit was exposed to and provides a basis for the deliberate indifference, equal protection, and disability discrimination claims. First, in his informal grievance, Thompson writes that Unit 3 inmates were ordered to stay on the athletic field from approximately 11:10 a.m. to 2:45 p.m. while officers conducted a compliance check, detailing "temperatures above 100 [degrees]" and an absence of shade or "any [restroom] facilities." (ECF No. 52-3 at 6-7.) In denying Thompson's informal grievance, prison officials referred to "conditions of confinement not meeting minimum standards," which they averred to remedy by placing inmates in the gymnasium in the future. (*Id.* at 12.) Thompson further stated in his first-level grievance that, "The men of unit three C wing were called back in the unit at 12:15, but the rest of the men in the unit, mostly 50 to 60 years of age, were forced to stay out in the extreme heat, locked in the athletic field untill 2:48," suggesting that Thompson's unit of elderly and disabled inmates was treated differently from able-bodied counterparts—supporting his equal protection and disability discrimination claims. (*Id.* at 16.) Moreover, Thompson noted that he was aware of two other men who needed medical attention during the incident and stated, "but we could not get any officers' attention," further grieving that "there had not been any gate calls for them to get inside." (*Id.*) Thompson reported that, as a result, he suffered "major burns" to both arms, his neck, and the top of his head along with extreme migraine headaches, elevated blood pressure, fever, and extreme exhaustion. (*Id.* at 8.) In response, prison officials claimed, "Medical attention was provided in the form of Sunscreen and IBU's." (*Id.* at 25.)

In their Motion, Defendants argue that Thompson's grievances addressed only the conditions of confinement during the incident and that he neither requested medical care

ER008                              ER008                              ER008

as a remedy nor complained of being denied care. (ECF No. 52 at 9.) However, the full grievance record shows that (1) Thompson emphasized the harm to his physical health by describing symptoms he experienced both during and after the incident; (2) Thompson asserted prison officials' apparent indifference to inmates' medical needs; and (3) prison officials operated under the belief that Thompson's grievances, in part, raised concerns about medical issues and a lack of adequate care. Defendants further contend that Thompson failed to allege any age- or disability-based discrimination. (*Id.*) However, as noted above, Thompson alluded to the fact that one group of inmates was treated differently from another based on physical capabilities and based on upon age. Thompson's grievances were thus based on the same underlying context now supporting his Eighth Amendment medical indifference, equal protection, and disability discrimination claims. The grievance process is intended to alert prisons to "the nature of the wrong"—here, primarily conditions of confinement but also corresponding constitutional issues and discriminatory treatment[12]—and "not to lay groundwork for litigation". *See Griffin*, 557 F.3d at 1120 (holding that a grievance need not state every relevant fact, nor state a legal cause of action). And, here, the Court finds Thompson adequately complied with NDOC grievance procedures by alerting officials to a "loss or harm . . . arising out of . . . issues within the authority and control of the NDOC" in sufficient factual detail. (ECF No. 52-7 at 2.)

Therefore, the record demonstrates that Thompson followed proper grievance procedures through all levels of review and that his grievances were sufficiently specific to provide notice of the relevant issues. Viewing all evidence in the light most favorable to Thompson, a rational trier of fact could find that Defendants failed to prove the affirmative defense of non-exhaustion. *See Albino*, 747 F.3d at 1166, 1176 (recognizing defendants' initial burden to prove this affirmative defense). The Court therefore rejects

---

[12]Both the ADA, 42 U.S.C. § 12132, and the RA, 29 U.S.C. § 794, apply in the prison context. *See United States v. Georgia*, 546 U.S. 151, 154 (2006). The Ninth Circuit has concluded that these Acts can constitutionally be applied to state prisons. *See Thompson v. Davis*, 295 F.3d 890, 895-99 (9th Cir. 2002); *Clark v. Cal.*, 123 F.3d 1267, 1270-71 (9th Cir. 1997).

ER009                    ER009                    ER009

Judge Denney's R&R and denies Defendants' Motion on the issue of administrative exhaustion.

### B.     Eighth Amendment—Conditions of Confinement Claim

The Court turns to the merits of Thompson's Eighth Amendment conditions of confinement claim against Walker and finds that a genuine factual dispute exists as to whether Walker knew of and disregarded a risk to Thompson's health or safety on the day of the incident. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) (holding that summary judgment requires the moving party to bear the burden of showing that there are no genuine issues of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (Once the moving party satisfies Rule 56's requirements, the burden then shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial.").

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted). While prison conditions need not be "comfortable," deprivations constituting an "unnecessary and wanton inflection of pain" or denying the "minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (citation and internal quotation marks omitted). In essence, prison officials have a duty to guarantee adequate food, clothing, shelter, and medical care. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

When a prison official is accused of imposing unsafe conditions of confinement in violation of the cruel and unusual punishment clause of the Eighth Amendment, the inquiry turns on whether the official "acted with deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). A prison official is deliberately indifferent when two requirements are met: (1) the objective requirement that

9

the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind."[13] *See Farmer*, 511 U.S. at 834-35 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

In evaluating the objective prong, courts may consider some conditions "in combination" when, taken together, they amount to an Eighth Amendment violation. *See Wilson*, 501 U.S. at 304 ("[F]or example, a low cell temperature at night combined with a failure to issue blankets" can produce a "mutually enforcing effect," depriving human needs such as "warmth."). Moreover, when evaluating conditions of confinement, courts should also consider the length of time the prisoner has been subjected to the condition. *See Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred.") And "the more basic the need, the shorter the time it can be withheld." *Johnson*, 217 F.3d at 731 (referencing the Eighth Circuit's finding, *see Gordon v. Faber*, 973 F.2d 686, 687 (8th Cir. 1992), that an Eighth Amendment violation occurred "where prison officials required inmates to remain outdoors in subfreezing temperatures for less than two hours, even though the inmates were provided with hip-length, lined denim coats and allowed to move freely"). Temperature is also a factor. *See Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) (affirming that "dangerously high temperatures that pose a significant risk to detainee health violate the Eighth Amendment" and holding that "one measure of an inadequate, as opposed to merely uncomfortable, temperature is that it poses 'a substantial risk of serious harm'" (internal citation omitted)). Here, the Court finds that detaining elderly and physically disabled inmates with preexisting medical conditions, such as Thompson, in excessive heat for a

---

[13]To prevail on a conditions of confinement claim under the Eighth Amendment, a plaintiff must make both of these showings. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).

ER011                              ER011                              ER011

prolonged period poses a "substantial risk of serious harm" and satisfies the objective prong.

To satisfy the subjective prong, a plaintiff must show actual knowledge—that prison officials knew of and disregarded a risk to inmate health or safety created by the condition. *See Farmer*, 511 U.S. at 826. Here, the primary factual dispute revolves around whether Walker had knowledge of the three-hour outdoor detention. In their Motion, Defendants dispute the subjective prong, arguing that Walker was not deliberately indifferent because she "had no actual knowledge of th[e] alleged confinement condition" and therefore did not violate Thompson's Eighth Amendment rights. (ECF No. 52 at 14.) Defendants assert that Walker did not "personally participate[]" in the alleged three-hour unconstitutional confinement because she completed her shift at 11:18 a.m., approximately three minutes after the Unit 3 inmates were taken out to the athletic field. (*Id.* at 13.) Notwithstanding, Walker, herself, concedes in her declaration that she was on shift that day and ordered the compliance check on Unit 3 along with the inmates' placement on the athletic field. (ECF No. 52-10 at 3.) Walker further acknowledges that she was aware of the physical mobility issues affecting some of the Unit 3 inmates. (*Id.*)

Moreover, in his Complaint and grievance record, Thompson alleges a series of factual circumstances detailing prison officials' failure to conduct regular gate calls during the detention along with inmates' complaints of discomfort. (ECF No. 52-3 at 16 ("Additionally, some men from unit one were out there with us were complaining that there had not been any gate calls for them to get inside out of the blistering sun.").) While Walker claims she was "not notified of any issues raised by an inmate" and that correctional officers were instructed to conduct gate calls every 30 minutes (ECF No. 52-10 at 3), the Court finds that such a determination requires a fact-intensive assessment, making summary judgment improper.

In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp.*, 793 F.2d at 1103. Viewing the evidence in the light most favorable to Thompson, the Court

11

ER012                    ER012                    ER012

finds that Defendants fail to show an absence of a genuine dispute of material fact as to the subjective component of Thompson's Eighth Amendment claim as applied to Walker. Accordingly, the Court denies Defendants' Motion as to the conditions of confinement claim.

### C. Qualified Immunity[14]

Defendants argue they are entitled to qualified immunity for Thompson's Eighth Amendment and Fourteenth Amendment claims. (ECF No. 52 at 6, 9-20.) First, they argue Thompson cannot establish an Eighth Amendment conditions of confinement violation because he cannot show that Walker was subjectively aware of his condition during the detention. (*Id.* at 12-15.) Next, Defendants argue Thompson is unable to establish an Eighth Amendment violation for deliberate indifference to a serious medical need based upon insufficient medical records and notice. (*Id.* at 12-13, 15-16.) Defendants further contend that Thompson cannot show that Walker intentionally discriminated against him due to his disability or age in violation of the Fourteenth Amendment Equal Protection Clause. (*Id.* at 13, 16-20.) Thompson counters that Defendants are not entitled to qualified immunity because Defendants violated clearly established law along with his Eighth and Fourteenth Amendment rights. (ECF No. 68 at 2-6.)

Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether qualified immunity applies, the Court must consider "(1) whether the official violated a constitutional right and (2) whether the

---

[14]The magistrate judge did not analyze qualified immunity in the R&R. The Court now conducts *de novo* review of Defendants' qualified immunity.

12

constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson* 555 U.S. at 232). District courts have discretion to address these prongs in any order. *Pearson*, 555 U.S. at 236.

Regarding the conditions of confinement claim, as discussed above, Defendants have not demonstrated an absence of a genuine dispute of material fact as to whether they violated Thompson's Eighth Amendment rights by detaining elderly and physically disabled inmates with preexisting medical conditions in excessive heat for a prolonged period.

Regarding the medical deliberate indifference claim, Defendants have similarly failed to meet their burden on summary judgment. Defendants' argument that Thompson "fail[ed] to establish that he had a serious medical need" or that he failed to properly grieve his resulting symptoms to NNCC medical staff is unconvincing. (ECF No. 52 at 15-16.) Under the second prong of a qualified immunity analysis, the proper inquiry is whether a reasonable official would have understood that their actions violated Thompson's rights. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Here, Defendants concede that they were aware of Thompson's preexisting medical conditions, citing records covering a three-year period during which Thompson was monitored for Behcet's disease. (ECF No. 52 at 2 ("Thompson's medical records show he has had Behcet's disease since at least 2017."), 15-16 ("[A]lthough Thompson has had Behcet's disease . . . the record also shows that from 2021 to 2024 Thompson was periodically monitored for this condition and received appropriate medical treatment and medication."); *see also* ECF Nos. 52-4, 54.) A reasonable jury could therefore conclude that Defendants should have, and could have, understood that placing Thompson and other medically compromised Unit 3 inmates in excessive heat for a prolonged period was deliberately indifferent and a clear violation of Eighth Amendment rights.

13

ER014                    ER014                    ER014

Regarding the Fourteenth Amendment equal protection claim, Defendants cannot show that they did not discriminate against Thompson or other disabled inmates. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted). Here, Defendants argue that Thompson cannot meet the requirements for an equal protection claim because he cannot establish that he belongs to a protected class. (ECF No. 52 at 17.) Yet, even if "the disabled do not constitute a suspect class" for equal protection purposes, *see Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996), a governmental policy that treats the disabled differently from the non-disabled must be rationally related to legitimate legislative goals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (invalidating city ordinance requiring special use permit to house disabled persons in group home). As discussed above, Thompson has alleged that he, along with other physically disabled Unit 3 inmates, were treated differently from their able-bodied counterparts when they were forced to remain outside on the athletic field as opposed to inside the gymnasium. A reasonable jury could find that such treatment did not advance any "legitimate" state interests. *See City of Cleburne*, 473 U.S. at 439-440. Moreover, under the Equal Protection Clause, "all persons similarly situated should be treated alike," and, here, a reasonable jury could also find that the Unit 3 inmates—with their respective mental and physical disabilities—were similarly situated but not treated alike, thereby violating Fourteenth Amendment rights. *See id.* at 439 (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)).[15]

Viewing all evidence in the light most favorable to Thompson, the Court finds that

---

[15]Defendants further argue—though not on qualified immunity grounds—that Thompson cannot establish his ADA or RA discrimination claims because there is no evidence that Walker engaged in discriminatory conduct toward him. (ECF No. 52 at 20-21.) The Court applies its same analysis as above and finds that a genuine dispute of material fact exists as to whether Walker discriminated against Thompson due to his disability or age, precluding summary judgment on these claims.

14

ER015                              ER015                              ER015

Defendants are not entitled to qualified immunity because Defendants have not shown an absence of genuine dispute of material fact as to whether they violated Thompson's Eighth and Fourteenth Amendment rights and whether Thompson's rights were clearly established at the time of violation.

### D.    Punitive Damages

Lastly, Defendants argue Thompson's claim for punitive damages should be dismissed because there is no clear and convincing evidence of "wanton and willful conduct" rising to the level of oppressive, fraudulent, or malicious behavior, as required under Nevada law. (ECF No. 52 at 22.) However, as to § 1983 claims, "[i]t is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct . . . involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). Taken together, Thompson's allegations could lead a reasonable jury to conclude that prison officials acted with reckless or callous disregard for the health and safety of Thompson and other Unit 3 inmates by exposing them to excessive heat for over three hours in violation of the Eighth Amendment—conduct that could support an award of punitive damages. Accordingly, viewing all evidence in the light most favorable to Thompson, the Court denies Defendants' request for summary judgment as to the punitive damages claim, as this question is one best left to a jury.

### IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Judge Denney's report and recommendation (ECF No. 75) is rejected.

It is further ordered that Defendants' motion for summary judgment (ECF No. 52) is denied.

ER016                              ER016                              ER016

The Court refers this case to Judge Denney to conduct a settlement conference.

The proposed joint pretrial order is due 30 days from the settlement conference.

DATED THIS 17th Day of October 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

ER017                                     ER017                                     ER017

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DAVID THOMPSON,

    Plaintiff

v.

PERRY RUSSELL, et al.,

    Defendants

Case No.: 3:23-cv-00341-MMD-CSD

**Report & Recommendation of United States Magistrate Judge**

Re: ECF No. 52

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 52, 52-1-52-13, 54-1.) Plaintiff filed a response. (ECF No. 65.) Defendants filed a reply. (ECF No. 73.)

After a thorough review, it is recommended that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (Pl.'s amended complaint, ECF No. 6.)

The court screened Plaintiff's complaint, and allowed him to proceed with the following claims: (1) an Eighth Amendment deliberate indifference conditions of confinement claim against Walker; (2) an Eighth Amendment deliberate indifference to serious medical needs claim against Russell; (3) an equal protection claim against Walker; and (4) claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) against Walker in her

ER018                    ER018                    ER018

official capacity. (ECF No. 7.) Plaintiff alleges that he suffers from Behcet's disease, is profoundly hearing impaired and was assigned a wheelchair for part-time use. He avers that on July 21, 2021, while he was housed in Unit 3 at NNCC, he and the other inmates in the unit were ordered detained on the athletic field for over three hours, in temperatures exceeding 100 degrees, without access to toilets, water, shade or shelter. He claims that he suffered extreme sunburn, heat exhaustion, migraine headaches, fever and chills, and urinated and defecated on himself.

Plaintiff alleges that Walker knew he was elderly, disabled, frequently used a wheelchair, and took medications that prohibited him from being in the sunlight, but nevertheless ordered his detention on the field in excessive heat.

Plaintiff asserts that as a result of the incident, he suffered extreme sunburn, dehydration, and heat stroke, and still suffers from episodes of vertigo and migraines. He received only ibuprofen after the fact, which he could not take, and when he filed grievances about this issue, they were denied by Russell, and he was provided no additional care.

Plaintiff claims that Walker violated his right to equal protection under the laws when he and the others in his unit were detained on the field and not in the gym because she did not want wheelchairs and walkers on the gym floor. He maintains that no other housing unit was detained on the field in extreme weather conditions.

Finally, Plaintiff avers that Walker violated his rights under the ADA and RA when Plaintiff was excluded from being detained in the gym during the search because he uses a wheelchair.

/ / /

/ / /

2

ER019                    ER019                    ER019

Defendants move for summary judgment, arguing: (1) Plaintiff failed to exhaust his administrative remedies with respect to his medical care, equal protection and ADA and RA claims; (2) Defendants are entitled to qualified immunity because Plaintiff cannot show Walker was subjectively aware of his complaints, he cannot show he complained of or sought medical care for the symptoms he alleges he suffered, and he cannot show discrimination due to his disability or age; and (3) his punitive damages claim fails.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law").

3

ER020          ER020          ER020

In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

4

be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted).

The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

5

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id*., 1168, 1170-71 (citations omitted).

Once a defendant shows the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016).

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

A grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). The grievance "need not include legal terminology or legal theories" as its "primary purpose ... is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1120.

ER023                    ER023                    ER023

To exhaust administrative remedies within NDOC, an inmate must comply with the grievance procedures set forth in Administrative Regulation (AR) 740, which require that an inmate complete three levels of a grievance: informal, first and second. (ECF No. 52-7.)

Here, Plaintiff does not dispute that he only filed one grievance about the July 11, 2021 incident: grievance 20063124885. (ECF No. 52-3.) In this grievance, Plaintiff stated that inmates from Unit 3 were ordered to stay on the athletic field from approximately 11:10 a.m. until 2:45 p.m., while officers conducted a compliance check of the unit. During this time, temperatures exceeded 100 degrees, and there was no access to shade or facilities. Plaintiff reported that he was harmed because he suffered major burns to both arms, his neck and the top of his head, and suffered extreme migraine headaches, elevated blood pressure, fever and extreme exhaustion. His requested remedy was that the officers who ordered staff to usher the inmates outside in the heat be terminated and charged criminally, and that $40,000 be placed in his trust account. (ECF No. 52-3 at 19-21.) His first level grievance stated that there were no gate calls every half hour, and most of the inmates had to stay in the heat on the field until 2:48 p.m. He noted that he was aware of two other men that needed medical attention during the incident, but could not get the officers' attention. (ECF No. 52-3 at 15-17.)

The grievance certainly suffices to exhaust administrative remedies for Plaintiff's Eighth Amendment conditions of confinement claim as it put NDOC officials on notice that Plaintiff was complaining about being placed in extreme heat without access to facilities or shade.

The grievance, however, did not put NDOC officials on notice that Plaintiff was claiming he was denied access to medical care, or that he was discriminated against based on a disability or use of a wheelchair or mobility device. There is no mention that he requested or was denied access to medical care following the incident. Nor is there any discussion of being placed on the

7

**ER024**                               **ER024**                               **ER024**

athletic field because he is disabled or because he uses a wheelchair or that he was discriminated against when he was placed on the field instead of in the gym. Plaintiff does not argue that he filed another grievance to exhaust administrative remedies for these claims, or that administrative remedies were unavailable to him.

Defendants' motion for summary judgment should be granted as to Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim, equal protection claim, and his ADA and RA claims, as Plaintiff did not exhaust administrative remedies as to those claims.

The court will now address the substance of the Eighth Amendment conditions of confinement claim against Walker.

**B. Eighth Amendment Conditions of Confinement Claim**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. Although conditions of confinement may be restrictive and harsh, they may not deprive inmates of "the minimal civilized measures of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and subjective component. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citation

ER025                           ER025                           ER025

omitted). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835.

Walker argues she is entitled to qualified immunity because there was no violation of the Eighth Amendment as there is no evidence that Walker personally participated in or knew of the alleged conditions Plaintiff claims violated the constitution.

Walker presents evidence that Warden Russell had a directive to conduct weekly unit compliance checks, and pursuant to that directive, on July 11, 2021, at approximately 11:00 a.m., she notified correctional officers on duty that they were to conduct a compliance check on Unit 3, because it was that unit's scheduled day for yard time. (ECF No. 52-10 ¶¶ 5-6.) Since it was their regularly scheduled yard time, the inmates of Unit 3 were placed on the athletic field. (*Id*. ¶ 7.) Walker directed the officers who were conducting the unit compliance check to provide these inmates with gate calls every 30 minutes, in compliance with Operational Procedure 516.1.04, which would provide the inmates with access to water, shade and restrooms. (*Id*. ¶ 8.)

Walker's shift ended at approximately 11:18 a.m. that day, and by that time, she had not been notified of any issues raised by an inmate about going to the athletic field during the unit compliance check. (*Id*. ¶ 9.)

Defendants propounded requests for admission on Plaintiff. Plaintiff never served responses to the requests for admission. (*See* ECF Nos. 52-8, 52-13.) Under Federal Rule of Civil Procedure 36, the failure to respond to the requests results in a finding that they are deemed admitted. Fed. R. Civ. P. 36(a)(3). Therefore, it is deemed admitted that Plaintiff did not contact

9

Walker to request assistance during the July 11, 2021, incident, and he did not personally make Walker aware of his complaints during the July 11, 2021, incident. (ECF No. 52-8 at 3-4.)

Plaintiff disputes that the inmates from Unit 3 on the field that day received gate calls every thirty minutes, but even if this is true, he has no evidence that Walker knew the correctional officers involved would not offer gate calls to the inmates that day. There is no evidence she had any further involvement when her shift ended at approximately 11:18 a.m., just minutes after Plaintiff claims he and the other inmates from his unit were taken to the field.

With no genuine dispute of material fact as to whether Walker knew of and disregarded a risk to Plaintiff's health or safety that day, summary judgment should be granted in Walker's favor for the remaining Eighth Amendment conditions of confinement claim.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 52).The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

///

///

///

10

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 14, 2025

_____
Craig S. Denney
United States Magistrate Judge

11